1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10
11
12

13 DERRON McLEAD,                     )       No. EDCV 02-858 GAF (CW)
                                     )
14              Petitioner,          )       REPORT AND RECOMMENDATION OF
                                     )       UNITED STATES MAGISTRATE JUDGE
15         v.                        )
                                     )
16 GEORGE GALAZA, Warden,            )
                                     )
17              Respondent.          )
   _____ )

18

19      This Report and Recommendation is submitted to the Honorable Gary

20 A. Feess, United States District Judge, pursuant to 28 U.S.C. § 636

21 and General Order 194 of the United States District Court for the

22 Central District of California.  For reasons stated below, the instant

23 Petition for habeas corpus relief should be denied and this action

24 dismissed with prejudice as time-barred and on the merits.

25                         **PROCEDURAL BACKGROUND**

26      Pro se Petitioner is a prisoner in state custody pursuant to a

27 conviction in California Superior Court, Riverside County, Case No.

28 CR-25725. [See Petition for Writ of Habeas Corpus by a Person in State

Custody (28 U.S.C. § 2254)("Petition" or "Pet.") at 3.]  On February 23, 1989, a jury found Petitioner guilty of first-degree murder, two counts of attempted murder, two counts of kidnaping, residential robbery, and three counts of conspiracy to commit first-degree murder.[1] [Clerk's Transcript ("CT) Volume 2, 395-98.]  The jury found true the special circumstances that the murder was committed for financial gain and committed during a robbery and also found true multiple firearm allegations. [Id.]  Petitioner's sentences included a state prison term of life without parole. [CT Volume 3, 571-72, 581-84.]

Petitioner appealed.  In a partially published opinion filed on November 27, 1990, the California Court of Appeal ordered sentencing on the kidnaping counts stayed but otherwise affirmed the judgment. People v. McLead, 225 Cal. App. 3d 906, 276 Cal. Rptr. 187 (1990).  On February 14, 1991, the California Supreme Court denied a petition for review. [Lodged Document ("Lodg.") 1.]

Petitioner filed a habeas petition in the Riverside County Superior Court, signed on April 22, 1997.[2] [Lodg. 2.]  The superior

---

[1]  Evidence was presented at trial showing that Petitioner and two other men participated in the murder of a drug-dealing competitor and the attempted murder of two other men. [Supplemental Lodged Document ("Supp. Lodg.") 4 at 1-2.]  At trial, both of the surviving victims identified Petitioner as one of their assailants. [Reporter's Transcript ("RT") Volume 3 at 439-41, 445, 467, 490, 496, 503, 506; Volume 5 at 907, 914, 942, 960.]  Years later, one of the victims, Phillip LeBlanc, made statements that were construed as a recantation of his testimony and that provide the basis for most of Petitioner's current claims.

[2]  The filing dates for Petitioner's court documents are determined by reference to the "prison mailbox rule" of Houston v. Lack, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988). "Under the 'mailbox rule,' a pro se prisoner's filing of a state habeas
(continued...)

court denied the petition on July 3, 1997. [Id.]  Petitioner filed

another petition in the superior court, signed on August 1, 1997.

[Lodg. 3.]  The superior court denied the petition on August 27, 1997.

[Id.]  Petitioner filed a habeas petition in the state court of

appeal, signed on October 21, 1997. [Lodg. 4.]  The court denied the

petition on November 10, 1997. [Id.]

More than eight months later, Petitioner filed another habeas

petition in the superior court, signed on July 26, 1998. [Lodg. 5.]

The superior court denied the petition on August 25, 1998, and denied

an ex parte request for explanation of the decision on September 18,

1998. [Id.; Lodg. 6.]  Petitioner filed a document construed as a

petition for writ of mandate in the court of appeal, signed on October

1, 1998. [Lodg. 7.]  The court denied the petition on October 14,

2008. [Id.]

Over a year later, Petitioner filed a habeas petition in the

superior court, signed on December 1, 1999. [Lodg. 8.]  The superior

court denied the petition on December 9, 1999. [Id.] Petitioner filed

a habeas petition in the state appellate court, signed on January 17,

2000. [Lodg. 9.] The court denied the petition on March 8, 2000. [Id.]

After an additional nine months, Petitioner filed a habeas

petition in the California Supreme Court, signed on December 14, 2000.

_____

2  (...continued)
petition is deemed filed at the moment the prisoner delivers it to
prison authorities for forwarding to the clerk of the court,' not when
the petition is filed by the court." Ramirez v. Yates, 571 F.3d 993,
996 n. 1 (9th Cir. 2009)(quoting Stillman v. Lamarque, 319 F.3d 1199,
1201 (9th Cir. 2003)); see Lewis v. Mitchell, 173 F. Supp. 2d 1057,
1059 n. 1 (C.D.Cal. 2001)(delivery for purposes of constructive filing
under prison mailbox rule is presumed to be on the date of signing the
petition, absent contrary evidence) (citations omitted).

1    [Lodg. 10.] The petition was denied on March 27, 2002. [<u>Id.</u>]

2         Petitioner filed the present Petition for Writ of Habeas Corpus

3    by a Person in State Custody (28 U.S.C. § 2254)("Petition"), signed on

4    August 7, 2002, and filed on August 15, 2002.  Petitioner asserts six

5    grounds for federal habeas corpus relief: (1) Petitioner was denied

6    his rights to be present and represented at a state post-conviction

7    hearing where the court denied habeas relief based on LeBlanc's

8    recantation; (2) the prosecutor withheld evidence that LeBlanc

9    initially informed the police that he could not identify Petitioner as

10   a participant in the crimes; (3) the prosecutor presented perjured

11   testimony by LeBlanc; (4) Petitioner was denied his right to

12   confrontation when the trial court struck the testimony of prosecution

13   witness Angela Kong prior to cross-examination; (5) trial counsel was

14   ineffective for failure to seek severance from Petitioner's co-

15   defendants and failure to call a percipient witness; and (6)

16   Petitioner is entitled to an evidentiary hearing based on LeBlanc's

17   recantation. [Petition at 6-7 and attachment.]

18        On February 10, 2003, the court issued a Report and

19   Recommendation finding that the Petition was untimely under the

20   limitations period of 28 U.S.C. § 2244(d) and recommending dismissal

21   with prejudice.  On February 26, 2003, Petitioner filed a reply

22   raising, for the first time, an issue of equitable tolling due to lack

23   of prison law library access.  On March 5, 2003, the court withdrew

24   the Report and Recommendation and ordered additional briefing.  On

25   April 11, 2003, Respondent filed a return renewing the untimeliness

26   argument and addressing Petitioner's claims on the merits.  On July

27   15, 2003, Petitioner filed a traverse.

28        As discussed below, the untimeliness issue is dispositive and

requires dismissal of the Petition.  In addition, Petitioner's claim should be denied on the merits.

**STATUTE OF LIMITATIONS**

**LEGAL STANDARD**

An application for federal habeas corpus relief on behalf of a person in custody pursuant to a state court judgment, filed after enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") on April 24, 1996, is subject to the one-year statute of limitations codified at 28 U.S.C. § 2244(d).  See Duncan v. Walker, 533 U.S. 167, 176, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001); Lindh v. Murphy, 521 U.S. 320, 326-27, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997); Wixom v. Washington, 264 F.3d 894, 895 (9th Cir. 2001).

The limitation period is calculated in light of Fed. R. Civ. P. 6(a).[3]  For petitioners whose convictions became final after AEDPA was enacted (on April 24, 1996), the one-year limitation period runs beginning on the latest of four alternative dates:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[3]  "[I]n computing any time period . . . : exclude the day of the event that triggers the period. . . and include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday."  Fed. R. Civ. P. 6(a).

28 U.S.C. § 2244(d)(1).

In most cases, the controlling provision is § 2244(d)(1)(A).  A judgment becomes final under this subsection in one of several ways: If the highest state court denies relief on direct review, and the petitioner files a petition for writ of certiorari in the United States Supreme Court, the judgment becomes final when the Supreme Court issues a decision or ruling.  Wixom, 264 F.3d at 897.  If the highest state court denies relief on direct review, and the petitioner does not file a certiorari petition, the judgment becomes final when the deadline for filing such a petition expires, ninety days after the decision by the highest state court.  Id.  If the petitioner does not seek direct review from the highest state court, the judgment becomes final when the time for seeking such review expires, as determined by state law.  Wixom, 264 F.3d at 898.

Under 28 U.S.C. § 2244(d)(2), the running of the one-year limitation period may be tolled while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  A petitioner is not entitled to such "statutory tolling" based on a prior habeas corpus petition or other application for collateral relief filed in federal court.  See Duncan v. Walker, 533 U.S. at 181-82.  The tolling provision does not restart the running of the limitations period if it expired before state collateral review began.  See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003); Green v. White, 223 F.3d 1001, 1003 (9th Cir. 2000).  Statutory tolling does not apply to a period between the end of direct review and the beginning of state collateral review.  See Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).  Nor does statutory tolling apply between the end of state

1  collateral proceedings and the filing of a federal habeas proceeding.

2  See Roy v. Lampert, 465 F.3d 964, 968 (9th Cir. 2006).

3      The statutory tolling provided under § 2244(d)(2) applies to the

4  time during which a properly filed state collateral proceeding was

5  "pending" before the state court.[4]  A state collateral proceeding is

6  pending either while it is actually under consideration before one

7  state court or during a "gap" between one state court's decision and

8  the proper filing of a timely application in a higher state court.

9  Evans v. Chavis, 546 U.S. 189, 193, 126 S. Ct. 846, 163 L. Ed. 2d 684

10 (2006); Carey v. Saffold, 536 U.S. 214, 219-21, 122 S. Ct. 2134, 153

11 L. Ed. 2d 260 (2002).[5]  Accordingly, statutory tolling generally

12 applies during "one full round of review" while a California

13 petitioner presents a series of petitions in the superior court, the

14 court of appeal, and the state supreme court, without undue delay.

15 See Chavis, 546 U.S. at 193; Saffold, 536 U.S. at 221-225; Delhomme v.

16

17      [4]  A petitioner is not entitled to any period of statutory
18 tolling based on an application for state collateral review that was
    not "properly filed."  See Pace v. Diguglielmo, 544 U.S. 408, 417, 125
19 S. Ct. 1807, 161 L. Ed. 2d 669 (2005).  A state habeas petition is not
    "properly filed" for purposes of statutory tolling under the AEDPA if
20 it was determined by the state court to be untimely as a matter of
    state law.  Allen v. Siebert, 552 U.S. 3, 5, 128 S. Ct. 2, 169 L. Ed.
21 2d 329 (2007)(citing Pace, 544 U.S. at 417).

22      [5]  In California habeas proceedings, after a lower court denies a
    habeas petition, the next proper step is filing a new habeas petition
23 (rather than an appeal) in a higher court, and the new petition is
    timely if filed within a "reasonable time."  Chavis, 549 U.S. at 192-
24 93.  If the state court has not explicitly indicated that a later
    petition was or was not timely, the reviewing federal court must
25 decide whether the gap between the two state petitions was reasonable.
    Id. at 193-200. In this context, the Chavis Court found "an
26 unjustified or unexplained" filing delay of six months to be
    unreasonable.  Id. at 200-01; see also Banjo v. Ayers, 625 F.3d 964,
27 970-71 (9th Cir. 2010); Waldrip v. Hall, 548 F.3d 729, 735 (9th Cir.
    2008); Gaston v. Palmer, 447 F.3d 1165, 1166-1167 (9th Cir. 2006).

28

                                    7

*Ramirez*, 340 F.3d 817, 821 n.3 (9th Cir 2003)(per curiam); *Biggs v. Duncan*, 339 F.3d 1045, 1048 (9th Cir. 2003); *Nino*, 183 F.3d at 1006 (tolling for "all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with respect to a particular postconviction application"). A round of state collateral review is completed when the decision of the highest state court becomes final. See *Saffold*, 536 U.S. at 220 (application remains pending until "final resolution through the State's post-conviction procedures"); *Delhomme*, 340 F.3d at 820; *Biggs*, 339 F.3d at 1048; see also *Lawrence v. Florida*, 549 U.S. 327, 332, 127 S. Ct. 1079, 166 L. Ed. 2d 924 (2007)(time that state post-conviction application is pending does not include any period for seeking Supreme Court certiorari review).[6]

Statutory tolling does not apply during a gap between the end of one round of review and the beginning of another. *Delhomme*, 340 F.3d at 821; *Biggs*, 339 F.3d at 1048. Consequently, if a petitioner first raises a claim in a state petition, then abandons that claim, not raising it again in the state courts, but instead, after a delay, raises a new claim in a new state petition, and pursues that new claim in a round of state petitions, tolling does not apply during the gap

---

[6]   Prior to January 1, 2003, Rule 24 of the California Rules of Court provided that the California Supreme Court's denial of a habeas petition became final thirty days after the denial order was filed. *Allen v. Lewis*, 295 F.3d 1046, 1046 (9th Cir. 2002)(en banc) (reaffirming *Bunney v. Mitchell*, 262 F.3d 973, 974 (9th Cir. 2001)(per curiam)). Effective January 1, 2003, Rule 24 was replaced by Rule 29.4(b)(2)(C), providing that the denial order becomes final upon filing.   See *Chuman v. Marshall*, No. CV 06-790 PA (JWJ), 2008 WL 4790675 at *4 (C.D. Cal. Oct. 27, 2008)(citing *Guzman v. Curry*, No. C 07-3052 SI (pr), 2008 WL 2024983, at *2 n. 1 (N.D. Cal. May 8, 2008)). Effective January 1, 2007, Rule 29.4 was renumbered to Cal. Rule of Court 8.532(b)(2)(C).

between the first two petitions.  Welch v. Carey, 350 F.3d 1079, 1082
(9th Cir. 2003)(en banc)(by abandoning claim in one petition and
waiting four and a half years to file another petition, petitioner
"abandoned his first full round of review and later simply embarked on
a new and different one").

The AEDPA limitations period is subject to equitable tolling in
appropriate cases.  Holland v. Florida, __ U.S. __, 130 S. Ct. 2549,
2560, 177 L. Ed. 2d 130 (2010).  Equitable tolling is warranted only
if the petitioner has been pursuing his rights diligently and
extraordinary circumstances beyond the petitioner's control precluded
timely filing.  Holland, 130 S. Ct. at 2562; Lawrence v. Florida, 549
U.S. 327, 335, 127 S. Ct. 1079, 166 L. Ed. 2d 924 (2007); Pace v.
DiGuglielmo, 544 U.S. 408 at 418; see also Porter v. Ollison, 620 F.3d
952, 959 (9th Cir. 2010); Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th
Cir. 2010); Randle v. Crawford, 604 F.3d 1047, 1057 (9th Cir. 2010);
Ramirez v. Yates, 571 F.3d 993, 998 (9th Cir. 2009); Waldron-Ramsey v.
Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009); Harris v. Carter, 515
F.3d 1051, 1054 (9th Cir. 2008).  The "extraordinary circumstances"
must be "the cause of [the] untimeliness." Roy v. Lambert, 465 F.3d at
969 (quoting Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003)).
"[T]he threshold necessary to trigger equitable tolling [under AEDPA]
is very high, lest the exceptions swallow the rule," and a petitioner
"bears the burden of showing that this extraordinary exclusion should
apply to him." Spitsyn, 345 F.3d at 799 (quoting Miranda v. Castro,
292 F.3d 1063, 1066 (9th Cir. 2002)); see also Waldron-Ramsey, id.
("To apply the doctrine in 'extraordinary circumstances' necessarily
suggests the doctrine's rarity . . . an external force must cause the
untimeliness, rather than . . . merely an 'oversight, miscalculation

9

1  or negligence on [the petitioner's] part, all of which would preclude

2  the application of equitable tolling" (quoting Harris, 515 F.3d at

3  1055)).

4           **APPLICATION TO PETITIONER'S CASE**

5       In light of the nature of Petitioner's claims, determination of

6  the applicable limitations starting date for the present Petition

7  under 28 U.S.C. § 2244(d)(1), as well as determination of any

8  entitlement to statutory tolling, must be made on a claim-by-claim

9  basis.   See Souliotes v. Evans, 622 F.3d 1173, 1180 (9th Cir. 2010).

10           **CLAIMS ONE, TWO, THREE, AND SIX**

11      Four of Petitioner's present claims are based on his assertion

12  that LeBlanc recanted his identification of Petitioner after the trial

13  ended.   Included in Petitioner's pleadings is a sworn statement by

14  LeBlanc, notarized on January 22, 1996, in which he asserts that

15  Petitioner had nothing to do with the present crimes. [Lodg. 10,

16  Exhibit A.]   On May 6, 1996, LeBlanc sent a letter to the trial judge

17  stating that his testimony had been a mistake, that he could not

18  identify Petitioner at the crime scene, and that he was in contact

19  with Petitioner's family. [Lodg. 10, Exhibit B.][7]

20  _____

21      [7]   LeBlanc's post-trial statements were turned over to the
   prosecutor, who arranged for investigators to interview LeBlanc on
22  July 19, 1996, and July 25, 1996. [Supplemental Lodg. 4 at 20 and
   Exhibits 17 and 18.]   In the first interview, LeBlanc confirmed the
23  accuracy of his written statements. [Id., Exhibit 17 at 5.] LeBlanc
   also indicated that he had been transported to the interview by
24  Petitioner's mother, whom he had befriended. [Id. at 8-10.]   In the
   second interview, however, LeBlanc stated that Petitioner's mother
25  initiated contact with him while he was in prison on an unrelated
   charge, and that a "Crip" forced him to contact her. [Id., Exhibit 18
26  at 3.]   LeBlanc further stated that when he eventually contacted
   Petitioner's mother, she forced him to write his recanting statements,
27  arranged for him to speak to the press, promised him ten thousand
28                                                    (continued...)

1    Because LeBlanc's statements, as they relate to Petitioner's

2    claims, were made almost seven years after Petitioner's trial ended,

3    the timeliness for Claims One, Two, Three, and Six is governed by §

4    2244(d)(1)(D), which establishes a statutory starting date on "the

5    date on which the factual predicate of the claim or claims presented

6    could have been discovered through the exercise of due diligence."

7    Although the record suggests that Petitioner should have known of

8    LeBlanc's post-trial statements when they were made in January 2006

9    and May 2006 because LeBlanc was in contact with Petitioner's family,

10   Petitioner asserts that he first discovered this evidence in July

11   2006. [Petitioner's Response to Motion to Dismiss ("Response") at 18.]

12   Accordingly, assuming that the limitations starting date under §

13   2244(d)(1)(D) was July 31, 1996, at the latest, the one-year period

14   expired on July 31, 1997, in the absence of tolling.

15       Applying this starting date, the limitations period ran until

16   April 22, 1997, when Petitioner constructively filed his first state

17   habeas petition in the superior court.  Assuming that Petitioner was

18   entitled to statutory tolling for the 202-day period that his first

19   three habeas petitions were before the state courts (from April 22,

20

21          [7]  (...continued)
22   dollars, and forced him to contact her weekly. [Id. at 3, 6-7, 13.]
     LeBlanc told the police interviewer that Petitioner's mother did not
23   know he was giving a second interview and that, "Her son, Darin
     McLead, was the one that opened the door.  I, I don't want to change
24   my statements.  The original case, Darin was there but this woman I
     got, I fear for my life." [Id. at 6.]  At the conclusion of the
25   interview, LeBlanc similarly commented that, "I'm under so much
     pressure from Ms. McLead to try to get her son out that it's driving
26   me crazy." [Id. at 16.]
27       On December 16, 1996, the prosecutor wrote a letter to
     Petitioner's mother stating that there was sufficient evidence to
28   support Petitioner's conviction and therefore no further action would
     be taken with regard to LeBlanc's statements. [Lodg. 7, Exhibit E.]

1   1997, to November 10, 1997), the AEDPA filing deadline was extended to

2   February 18, 2008.[8]

3        Following the denial of his third state habeas petition,

4   Petitioner constructively filed his fourth petition more than eight

5   months later, on July 26, 1998.  In the fourth petition, Petitioner

6   abandoned his earlier claim and raised for the first time his current

7   claims of error with respect to LeBlanc's recanting statements.

8   Because this petition initiated a new round of state collateral

9   review, no statutory tolling is available for the eight-month gap

10  between rounds.  See Delhomme, 340 F.3d at 821; Biggs, 339 F.3d at

11  1048; Welch, 350 F.3d at 1082.  Accordingly, the AEDPA limitations

12  period expired on February 18, 2008 and could not be reinitiated by

13  any later state court filings.  See Ferguson, 321 F.3d at 823; Green,

14  223 F.3d at 1003.  Because Petitioner's present Claims One, Two,

15  Three, and Six were brought in this action more than four years after

16  the limitations expiration, they are untimely.

17                        **CLAIMS FOUR AND FIVE**

18       Petitioner's remaining claims, challenging denial of his right to

19  cross-examine Angela Kong and counsel's performance at trial, arise

20  from facts that could have been discovered with due diligence by the

21  end of Petitioner's trial.  Accordingly, no delayed starting date is

22  available for these claims, and the applicable triggering date is

23  April 24, 1996, when the AEDPA was enacted.  See Miles v. Prunty, 187

24  F.3d 1104, 1105 (9th Cir. 1999)(noting limitations starting date of

25  April 24, 1996, for prisoners whose convictions became final before

26

27       [8]  Petitioner's first three state habeas petitions failed to
    raise any claims relating to LeBlanc's statements or even mention
28  them; rather, Petitioner's only challenge was to the imposition of a
    restitution fine. [Lodg. 2, 3, and 4.]

enactment of the AEDPA).  Absent tolling, the limitations period expired one year later, on April 24, 1997.

For Petitioner, the statutory period ran until he constructively filed his first habeas petition on April 22, 1997.  As with his other claims, assuming that Petitioner is entitled to statutory tolling for the 202-day period that his first three habeas petitions were before the state courts, the AEDPA filing deadline was extended to November 12, 1997.

As noted above, no tolling is available for the gap following Petitioner's third state habeas petition because Petitioner subsequently initiated a new round of state collateral review.  See Delhomme, 340 F.3d at 821; Biggs, 339 F.3d at 1048; Welch, 350 F.3d at 1082.  Accordingly, the limitations period expired on November 12, 1997, and was not reinitiated by Petitioner's later filings.  See Ferguson, 321 F.3d at 823; Green, 223 F.3d at 1003.  Because present Claims Four and Five were not raised in this action until almost five years later, they are untimely.

**PETITIONER'S ASSERTIONS ABOUT THE LAW LIBRARY**

Because all of Petitioner's claims are facially time-barred, the instant Petition is subject to dismissal in its entirety unless Petitioner can demonstrate entitlement to substantial periods of equitable tolling or some other basis for a delayed starting date. Petitioner did not initially present any basis for equitable tolling, but following issuance of the initial Report and Recommendation, Petitioner asserted for the first time that he is entitled to tolling because the prison did not make any information or materials about the AEDPA available until 2001. [See Petitioner's Supplemental Rely ("Reply") at 2.]

Consistent with Petitioner's assertions, the Ninth Circuit has held that the absence of any materials about the AEDPA in a prison library, combined with a prisoner's lack of knowledge of the limitations period, could constitute extraordinary circumstances warranting application of equitable tolling or a later start date under § 2244(d)(1)(B) because of a state-created impediment. <u>See</u> <u>Roy v. Lampert</u>, 465 F.3d at 974; <u>Whalem/Hunt v. Early</u>, 233 F.3d 1146, 1148 (9th Cir. 2000). Here, however, Petitioner's assertions about his circumstances are unsupported by the record. Included in Respondent's filings are two declarations from officials at Corcoran prison, where Petitioner was incarcerated for the relevant period, that refute Petitioner's assertions about the inadequacy of the library. The first declaration, by the supervising librarian, states that library records indicated that the AEDPA was received at the prison on April 12, 1997. [Respondent's Return, Exhibit B.] The second declaration, by the supervisor of education programs, also states that prison records indicate that the AEDPA was received at Corcoran on April 12, 1997; moreover, it is the custom and habit of the prison to place all newly-received materials in service within two weeks of arrival. [<u>Id.</u>, Exhibit C.] This detailed evidence convincingly establishes that AEDPA materials were available to prisoners at Corcoran during all relevant periods for the present claims.

Petitioner challenges the sufficiency of the officials' statements about the prison library, citing the decision in <u>Edinbyrd v. Ortiz</u>, Case No. CV 01-5580 CAS (AJW). [Traverse at 3.] In <u>Edinbyrd</u>, the court indicated that official statements about the availability of prison legal resources were inadequate where they failed to indicate whether copies of the AEDPA were placed in the

prison law libraries so that inmates might access it.  However, a
subsequent showing in Edinbyrd that the normal practice and procedure
at Corcoran was to make new library materials available for use by
prisoners within thirty days of shipment was considered competent,
detailed evidence that precluded equitable tolling or delayed accrual
based on the state of the prison library.  Thus, a finding that
tolling is unwarranted in this case, based on the practice and
procedure at Corcoran to make legal materials available to prisoners
within two weeks of arrival, is entirely consistent with the findings
in Edinbyrd.

Petitioner also makes a related assertion that despite official
statements about the availability of the AEDPA to Corcoran inmates,
books were often not stocked in the library but left to accumulate in
library offices. [Traverse at 4.]  Petitioner's assertion is
unspecific as to time and unsupported by any evidence, and therefore
affords no basis for tolling or a delayed starting date.  Even
assuming that the assertion was true, so that library materials were
unavailable or delayed for some period, this amounts to no more than a
description of ordinary prison conditions that does not rise to the
level of an extraordinary circumstance; it follows that there was not
an official impediment that caused Petitioner's untimely filing.  See
Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) (rejecting
argument that lack of access to library materials automatically
qualified as grounds for equitable tolling); Gaston v. Palmer, 417
F.3d 1030, 1035 (9th Cir. 2005)(rejection of equitable tolling claim
on the ground of insufficient library access constituted an "implicit
rejection of [petitioner's] impediment argument" under §
2244(d)(1)(B)), amended on other grounds by 447 F.3d 1165 (2006).

1    Accordingly, despite Petitioner's objections, there is no basis to

2    find that the condition of the law library facilities where he was

3    incarcerated warrants equitable tolling or a delayed starting date for

4    the limitations period in this action.

5         The record does not otherwise establish the existence of any

6    extraordinary circumstance which precluded timely filing.[9]   The

7    present Petition is therefore untimely and should be dismissed with

8    prejudice.

9                                **MERITS**

10        Finally, even if Petitioner's claims were timely raised, they

11   would not warrant federal habeas relief, as briefly discussed below.

12   The merits of Petitioner's claims were adjudicated and denied by the

13   state courts, and those decisions were not contrary to or an

14   unreasonable application of clearly-established Supreme Court law, nor

15   where they an unreasonable determination of the facts in light of the

16   evidence.  28 U.S.C. § 2254(d).  See Harrington v. Richter, No. 09-

17   587, 2011 WL 148587, at *9 (U.S. Jan. 19, 2011)(review of state

18   court's summary denial of habeas claim is governed by deferential

19   AEDPA standard).

20        Petitioner's first claim is that he was denied his constitutional

21   right to be present and represented at the state post-conviction

22   hearing where LeBlanc's post-trial statements were considered and

23   habeas relief was denied. [Petition at 6.]  However, there is no

24   clearly-established Supreme Court authority supporting Petitioner's

25   _____

26        [9]  Although Petitioner makes an additional claim of an exception
     to the untimeliness bar on the ground of a fundamental miscarriage of
27   justice [Response at 21-24], no such exception is available under §
     2244(d)(1).  See Souliotes, 622 F.3d at 1181; Lee v. Lampert, 610 F.3d
28   1125, 1129 (9th Cir. 2010).

1  assertion that such a situation implicates a petitioner's federal

2  constitutional rights.  See Oken v. Warden, MSP, 233 F.3d 86, 92, 95

3  (1st Cir. 2000)(finding no legal authority to support petitioner's

4  right to be present at state post-conviction hearing under

5  confrontation and due process clauses, so long as the proceeding was

6  fundamentally fair).  Moreover, the record contains no indication that

7  a state post-conviction hearing in this case even occurred.

8  Petitioner attempts to refute the record by asserting that his mother

9  was informed by a court clerk that a hearing was scheduled, that his

10 mother tried to gain access to the hearing, and that she was turned

11 away.  [Traverse at 9.]  Petitioner's unsupported assertions provide

12 no basis for federal habeas relief.[10]

13      In the second and third claims, Petitioner asserts that in light

14 of LeBlanc's post-trial statement in which he claimed he could not

15 initially identify Petitioner at the crime scene, the prosecutor

16 withheld material evidence and presented perjured testimony by LeBlanc

17 at trial. [Petition at 6-7.]  Petitioner's claims, however, rely on

18 the premise that LeBlanc's recantation was sincere and freely made.

19 The record establishes, in great detail, a factual basis reasonably

20 supporting the conclusion that LeBlanc was intimidated by Petitioner's

21 mother to make a false recantation and that LeBlanc's initial

22 identification of Petitioner was genuine, facts that LeBlanc provided

23 to police investigators at the second interview, of which Petitioner's

24 mother was unaware.  Accordingly, Petitioner has presented no grounds

25 for this court to disregard the objectively reasonably state court

26

27       [10]  The record does indicate that Petitioner's mother tried to

28 gain access to the prosecutor's first interview of LeBlanc on July 19,
   1996, but was turned away. [Supp. Lodg. 4, Exhibit 18 at 5.]

1  adjudications rejecting these claims.

2       Petitioner's fourth habeas claim alleges violation of his

3  confrontation rights based on the testimony of Angela Kong,

4  Petitioner's girlfriend at the time of the crimes.  As relevant to the

5  claim, Kong testified for the prosecution that: on the night of the

6  crimes, she went to Petitioner's house, but he was not there; she

7  returned to Petitioner's house later and saw Petitioner; Petitioner

8  directed her to his garage, where she saw Petitioner's co-defendants;

9  and she learned of the shootings later that evening from Petitioner.

10 [RT Volume 2 at 252-53, 264-67, 268.]  The defense wished to cross-

11 examine Kong about what Petitioner said to her, based on the

12 expectation that Kong would testify that Petitioner learned of the

13 crimes from his co-defendants, rather than through personal knowledge.

14 [Id. at 272, 274.]  The trial court determined that such testimony

15 would violate the co-defendants' confrontation rights, denied

16 Petitioner's motion for mistrial, and struck Kong's testimony before

17 the defense could cross-examine her. [Id. at 285-87.]  The court then

18 admonished the jury to disregard Kong's testimony, commented that

19 "there is a problem with [the testimony] that makes it inadmissible,"

20 and directed the jury "not to let it come up in anyway in your

21 deliberations."  [Id. at 301.]  Under the circumstances presented

22 here, Petitioner has not shown a violation of his constitutional

23 rights or prejudice.  See Greer v. Miller, 483 U.S. 756, 766 n. 8 107

24 S. Ct. 3102, 97 L. Ed. 2d 618 (1987)("We normally presume that a jury

25 will follow an instruction to disregard inadmissible evidence

26 inadvertently presented to it, unless there is an 'overwhelming

27 probability' that the jury will be unable to follow the court's

28 instructions"); Hayes v. Ayers, ___ F.3d ___, 2011 WL 61643, at *10 (9th

                                      18

Cir. Jan. 7, 2011)("Outside of exceptional circumstances . . . juries

are presumed to follow their instructions, . . . including the routine

instruction to disregard inadmissible evidence")(citations omitted).[11]

Petitioner's fifth claim is an assertion of ineffective

assistance of trial counsel for failure to seek severance from his co-

defendants and failure to present the testimony of a percipient

witness. [Petition Attachment (Ground Five).]  Petitioner's claim

relating to severance is based on his assertion that his co-defendants

would have testified to his innocence at a separate trial. [Id.]

However, this assertion has been refuted by trial counsel, who

submitted a declaration stating that both co-defendants indicated that

they would not testify for Petitioner either in a separate trial or

the trial that was actually held. [Supp. Lodg. 4, Exhibit 19.]

Petitioner's second claim of ineffective assistance relates to

counsel's failure to present the testimony of Wherlebee Gobert, who

resided at the apartment where the crimes began and supposedly would

have given testimony that exonerated Petitioner. [Petition Attachment

(Ground Five); Traverse at 20.]  This assertion has also been refuted

by trial counsel's declaration, which indicated that counsel

interviewed Gobert three times and discovered that Gobert was a heavy

drug user, was under the influence of narcotics at the time of the

crimes, claimed not to recall the incidents, appeared to be under the

influence of narcotics during interviews, and was difficult to locate;

_____

[11]  Moreover, in a reasoned opinion on direct review, the state
appellate court reasonably found little likelihood of prejudice under
these circumstances because Kong's testimony was vague and brief,
occurred early during a lengthy trial, and was stricken with an
admonishment to the jury to disregard it; Petitioner himself testified
that his knowledge of the crimes came from his co-defendants, not from
his own involvement. [Supp. Lodg. 4 at 26-27.]

19

counsel accordingly decided that Gobert "could only hurt the defense."[12] [Supp. Lodg. 4, Exhibit 19.]  The evidence thus shows that counsel made reasonable tactical decisions on these grounds, and his performance is entitled to substantial deference.  See Strickland v. Washington, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Finally, Petitioner claims that he is entitled to an evidentiary hearing based on LeBlanc's recanting statements. [Petition Attachment (Ground Six).]  However, Petitioner's unfounded assertions about this witness provide no basis for an evidentiary hearing.  See Davis v. Woodford, 384 F.3d 628, 641 (9th Cir. 2004)(finding evidentiary hearing not required where petitioner "has not demonstrated that he is entitled to relief on any claim").

**RECOMMENDATION**

It is recommended that the court issue an order: (1) accepting this Report and Recommendation; (2) granting respondent's motion to dismiss (docket no. 12, filed September 27, 2002); and (3) dismissing the petition, with prejudice, as time-barred.

DATED: January 26, 2011

_Carla M. Woehrle_
CARLA M. WOEHRLE
United States Magistrate Judge

---

[12]  Moreover, a sheriff's department report indicated that during an interview, Gobert identified Petitioner as one of the people who came to his apartment and participated in the crimes that occurred there. [CT Volume 3 at 619.]